UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.      -Civ-

| | |
|---|---|
| NGHIEM TRAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ERBA DIAGNOSTICS, INC., MOHAN GOPALKRISHNAN, ERNESINA SCALA, SANJIV SURI, AND PRAKASH PATEL,<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nghiem Tran ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by ERBA Diagnostics, Inc, ("ERBA" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the securities of ERBA between April 14, 2014 and November 20, 2015 (the "Class Period"), inclusive, seeking to recover compensable

1

damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as the Company conducts business in this district and maintains its headquarters in this district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased ERBA common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant ERBA is a Delaware Corporation headquartered at 14100 NW 57th Court, Miami Lakes, Florida 33014. ERBA develops, manufactures, and markets diagnostic test kits or assays, and automated systems that are used to aid in the detection of disease markers primarily in the areas of autoimmune, infectious diseases, clinical chemistry, hematology, and

diabetes testing. During the Class Period, the Company's stock was traded on the NYSE under the symbol "ERB."

8. Defendant Sanjiv Suri ("Suri") was the Company's Interim Chief Executive Officer ("CEO") from the beginning of the Class Period until his resignation, effective on June 1, 2014.

9. Defendant Prakash Patel ("Patel") was the Company's Principal Financial Officer, Principal Accounting Officer, and Controller from the beginning of the Class Period until his resignation, effective April 30, 2015.

10. Defendant Mohan Gopalkrishnan ("Gopalkrishnan") has been the Company's CEO from June 1, 2014 through the end of the Class Period.

11. Defendant Ernesina Scala ("Scala") has been the Company's Chief Financial Officer ("CFO") effective May 1, 2015.

12. Defendants Suri, Patel, Gopalkrishnan and Scala are collectively referred to hereinafter as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

    (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. ERBA is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to ERBA under *respondeat superior* and agency principles.

16. Defendant ERBA and the Individual Defendants are collectively referred to hereinafter as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. ERBA specializes in the manufacture and marketing of proprietary diagnostic reagents, test kits and instrumentation in the areas of autoimmune, chemistry, hematology, diabetes and infectious diseases.

18. ERBA is the parent corporation to several subsidiaries, including: Delta Biologicals, S.r.l.; Diamedix Corporation; Drew Scientific, Inc.; ImmunoVision, Inc.; and JAS Diagnostics, Inc.

**Defendant's False and Misleading Statements**

19. The Class Period begins on April 14, 2014, when the Company filed its annual report on Form 10-K for the year ending December 31, 2013 (the "2013 10-K") with the SEC, which contained the Company's financial results for the year ending December 31, 2013. The 2014 10-K was signed by Defendants Suri and Patel. The 2013 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Suri and Patel attesting to the accuracy of financial reporting.

20. On May 15, 2015, the Company filed its annual report on Form 10-K for the year ending December 31, 2014 (the "2014 10-K") with the SEC, which contained the Company's financial results for the year ending December 31, 2014. The 2014 10-K was signed by Defendant Gopalkrishnan. The 2014 10-K contained signed SOX certifications by Defendant Gopalkrishnan attesting to the accuracy of financial reporting.

21. On June 26, 2015, the Company filed a Form 10-Q for the quarterly period ended March 31, 2015 (the "1Q2015 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 1Q2015 10-Q was signed by Defendant Gopalkrishnan. The 1Q2015 10-Q contained signed SOX certifications Defendant Gopalkrishnan attesting to the accuracy of financial reporting.

22. On August 5, 2015, the Company filed a Form 10-Q for the quarterly period ended June 30, 2015 (the "2Q2015 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 2Q2015 10-Q was signed by Defendant Scala. The 2Q2015 10-Q contained signed SOX certifications by Defendants Gopalkrishnan and Scala attesting to the accuracy of financial reporting.

23.     The statements referenced in ¶¶ 19 – 22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) ERBA's accounting of intercompany transactions among its subsidiaries, including its consolidated financial statements, were improper and had an impact on reported assets and liabilities; (2) ERBA lacked adequate controls over financial reporting; (3) ERBA's financial statements during the Class Period were materially false and misleading; and (4) as a result, Defendants' statements about ERBA's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

24.     On November 16, 2015, the Company filed a Form NT 10-Q with the SEC stating that the Company had delayed its filing of the quarterly report for the three and nine months ended September 30, 2015. The Form NT 10-Q stated in relevant part:

> ERBA Diagnostics has delayed filing its Quarterly Report on Form 10-Q for the three and nine months ended September 30, 2015. As ERBA Diagnostics has previously reported, in connection with ERBA Diagnostics' efforts to improve the effectiveness of its internal control over financial reporting, ERBA Diagnostics has undertaken a review of the intercompany transactions among its subsidiaries and the resulting eliminations made, or required to be made, in the process of producing its consolidated financial statements and their potential impact on reported assets and liabilities. In furtherance of its efforts to improve the effectiveness of its internal control over financial reporting, and in connection with this review, ERBA Diagnostics has also implemented a new, enhanced balance sheet review process with a particular focus on reconciliation of significant accounts, including, among others, intercompany accounts and corresponding eliminations made, or required to be made, at the consolidated level, and their potential impact on its consolidated financial statements. These

6

reviews are on-going and the amounts at issue, which may be material, and the periods to which they relate have not yet been concluded. As a result, ERBA Diagnostics has delayed filing its Quarterly Report on Form 10-Q. ERBA Diagnostics is working diligently to conclude these reviews and, thereafter, to complete and file its Quarterly Report on Form 10-Q.

25. On this news, shares of ERBA securities fell $0.01 per share or .5% from its previous closing price on November 13, 2015 to close at $1.79 per share on November 16, 2015, damaging investors.

26. After trading closed on November 20, 2015, the Company filed a Form 8-K with the SEC, stating that several of the previously issued financial statements could no longer be relied upon and that ERBA had deficient internal controls. The November 20, 2015 Form 8-K states in relevant parts:

> **Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**
>
> (a) On November 20, 2015, the Audit Committee of the Board of Directors of ERBA Diagnostics, Inc. (the "Company"), after discussion with the Company's management team, *concluded that the Company's financial statements for each of the years ended December 31, 2014 and 2013 and for each of the interim periods ended March 31, 2015 and June 30, 2015 (collectively, the "Non-Reliance Periods") should no longer be relied upon. Further, the Company's disclosures related to such financial statements, such as those included in the Company's Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, earnings press releases, earnings conference calls and similar prior communications issued by or on behalf of the Company, with respect to the Non-Reliance Periods should also no longer be relied upon.* The Company intends to restate its financial statements for the Non-Reliance Periods by filing amendments to its Annual Report on Form 10-K for the year ended December 31, 2014, which will also include details regarding adjustments in the portion of the Non-Reliance Period occurring during the year ended December 31, 2013, and its Quarterly Reports for the periods ended March 31, 2015 and June 30, 2015 (collectively, the "Restated Filings") as soon as practicable.
>
> In addition, as the Company had previously reported, the Company has delayed the filing of its Quarterly Report on Form 10-Q for the interim period ended September 30, 2015. The Company expects to file its Quarterly Report on Form 10-Q for the interim period ended September 30, 2015 on or about the same time it files the Restated Filings.

7

**Background**

As the Company had previously reported, the Company's management had evaluated the effectiveness of the Company's internal control over financial reporting and, based upon those evaluations, *the Company's management had concluded that the Company's internal control over financial reporting was not effective, because there was a material weakness in the Company's internal control over financial reporting as a result of the Company's inadequate staffing of its financial accounting office, which had resulted in, among other things, at times the Company being unable to provide timely account reconciliations*. As the Company had also previously reported, the Company's remediation efforts to address this material weakness have been on-going and include, among other things, hiring additional qualified finance personnel and evaluating and undertaking certain improvements to the Company's systems and processes, which, if successful, the Company believes will be sufficient to provide it with the ability to remediate or cure such material weakness in the future. As the Company had also previously reported, in connection with the Company's efforts to improve the effectiveness of its internal control over financial reporting, ERBA Diagnostics has undertaken a review of the intercompany transactions among its subsidiaries and the resulting eliminations made, or required to be made, in the process of producing its consolidated financial statements and their potential impact on reported assets and liabilities.

During the third quarter of 2015, the Company implemented, among other things, a new, enhanced balance sheet review process, with a particular focus on reconciliation of significant accounts, including, among others, intercompany accounts and corresponding eliminations made, or required to be made, at the consolidated level, and their potential impact on its consolidated financial statements. In the course of implementing such new, enhanced review process and reviewing such transactions among its subsidiaries and the resulting eliminations made, or required to be made, in the process of producing its consolidated financial statements as discussed above, the Company identified materially out of balance accounts evident in the elimination process and noted erroneous recording of transactions to such intercompany and other accounts throughout the Non-Reliance Periods. The Company's review of these matters is on-going.

**Expected Impact of Restatements**

Preliminary indications from the Company's review are that the necessary adjustments to the Company's financial statements during the Non-Reliance Periods are expected to result in an aggregate decrease in net income (or increase in net loss) in the approximate range of $3.0 - $4.0 million, as well as in a shift of certain previously recorded income and expense items to the appropriate periods throughout the Non-Reliance Periods. The Company expects these adjustments to materially impact cost of goods sold, general and administrative expense and

> various off-setting balance sheet accounts. The Company has not yet completed its final determination and review of the matters discussed above and, therefore, the amounts described above and the periods to which they relate are preliminary, unaudited estimates that are subject to change. There can be no assurance that the final amounts and adjustments will not differ materially from the estimated amounts described above, or that additional adjustments will not be identified, the impact of which may be material.
>
> The Audit Committee has discussed the matters set forth in this Current Report on Form 8-K with its independent registered public accounting firm – Mayer Hoffman McCann P.C.

(Emphasis added).

27. On this news, shares of the Company fell $0.30 per share or over 17% from its previous closing price on November 20, 2015, to close at $1.44 per share on November 23, 2015, further damaging investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired ERBA common stock during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of ERBA, members of the Individual Defendants' and Director Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ERBA common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business ERBA;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused ERBA to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of ERBA's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- ERBA shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

- As a public issuer, ERBA filed periodic public reports with the SEC and the NYSE;

- ERBA regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- ERBA was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

35. Based on the foregoing, the market for ERBA common stock promptly digested current information regarding ERBA from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. This Count is asserted against ERBA and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39. During the Class Period, ERBA and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. ERBA and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of ERBA common stock during the Class Period.

41. ERBA and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of ERBA were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced

12

in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of ERBA, their control over, and/or receipt and/or modification of ERBA's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning ERBA, participated in the fraudulent scheme alleged herein.

42. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other ERBA personnel to members of the investing public, including Plaintiff and the Class.

43. As a result of the foregoing, the market price of ERBA common stock was artificially inflated during the Class Period. In ignorance of the falsity of ERBA's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of ERBA securities during the Class Period in purchasing ERBA common stock at prices that were artificially inflated as a result of ERBA's and the Individual Defendants' false and misleading statements.

44. Had Plaintiff and the other members of the Class been aware that the market price of ERBA common stock had been artificially and falsely inflated by ERBA's and the Individual Defendants' misleading statements and by the material adverse information which ERBA's and the Individual Defendants did not disclose, they would not have purchased ERBA common stock at the artificially inflated prices that they did, or at all.

45. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46. By reason of the foregoing, ERBA and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of ERBA common stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of ERBA, and conducted and participated, directly and indirectly, in the conduct of ERBA's business affairs. Because of their senior positions, they knew the adverse non-public information about ERBA's misstatement of revenue and profit and false financial statements.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to ERBA's financial condition and results of operations, and to correct promptly any public statements issued by ERBA which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which ERBA disseminated in the marketplace during the Class Period concerning ERBA's results of operations. Throughout the Class Period, the Individual

Defendants exercised their power and authority to cause ERBA to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of ERBA within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of ERBA common stock.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by ERBA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 2, 2015             Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence Rosen
Laurence Rosen, Esq.
Fla. Bar No. 0182877
275 Madison Avenue, 34th Floor

New York, NY  10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com


Michael Goldberg, Esq.
**GOLDBERG LAW PC**
13650 Marina Pointe Dr. Suite 1404
Marina Del Rey, CA 90292
Phone: 1800-977-7401
Fax: 1800-536-0065

Counsel for Plaintiff