**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-cv-24440-COOKE/TORRES**

NGHIEM TRAN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ERBA DIAGNOSTICS, INC., SURESH VAZIRANI, KEVIN D. CLARK, SANJIV SURI, MOHAN GOPALKRISHNAN, ARLENE RODRIGUEZ, PRAKASH PATEL, ERNESINA SCALA, ERBA DIAGNOSTICS MANNHEIM GMbH, TRANSASIA BIO MEDICALS LTD., and MAYER HOFFMAN MCCANN P.C.

Defendants.

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement (together with all Exhibits thereto, the "Stipulation"), dated as of June 28, 2018, which is entered into by and among (i) the Lead Plaintiff Nghiem Tran ("Tran" or "Lead Plaintiff"), on behalf of himself and on behalf of the Settlement Class (as defined herein), (ii) ERBA Diagnostics, Inc. ("ERBA"), Suresh Vazirani, Kevin Clark, Sanjiv Suri, Mohan Gopalkrishnan, Arlene Rodriguez, and Prakash Patel, ERBA Diagnostics Mannheim GmbH, Transasia Biomedicals Ltd. (collectively, "ERBA Defendants"), and (iii) Mayer Hoffman McCann P.C. ("MHM" and with ERBA Defendants, the "Defendants"), by and through their undersigned attorneys, states all of the terms of the settlement and resolution of this matter by the Parties (as defined herein) and is intended by the Parties to fully and finally release, resolve, remise and discharge the Released Claims (as defined herein) against the Released Parties (as defined herein),

subject to the approval of the United States District Court for the Southern District of Florida (the "Court").

Throughout this Stipulation, all terms used with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section 1 below.

**A. The Action**

On December 1, 2015 and December 2, 2015, respectively, two putative federal securities class actions styled as *Brown v. ERBA Diagnostics, Inc., et al.,* Case No.15-cv- 24425 ("*Brown* Action") and *Tran v. ERBA Diagnostics, Inc., et al.,* Case No.15-cv-24440 were filed in the United States District Court for the Southern District of Florida against ERBA and certain of its current and former officers and directors (the "Action")[1]. The Action alleges that Defendants violated either or both of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. On February 9, 2016, the *Brown* Action was voluntarily dismissed.

By Order dated April 8, 2016, the Court appointed Tran as Lead Plaintiff and The Rosen Law Firm, P.A. and Goldberg Law PC to serve as Co-Lead Counsel for the Plaintiffs (Dkt. No. 31). On June 10, 2016, Lead Plaintiff filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") (Dkt. No. 34). Among other things, the Complaint dropped Ernesina Scala as an individual defendant and added MHM.

On August 8, 2016, Defendant MHM as well as the ERBA Defendants filed motions to dismiss the Complaint, as Dkts. Nos. 40 and 41, respectively. These motions were fully briefed on October 24, 2016. On December 2, 2016, Defendant Transasia Bio Medicals, Ltd ("Transasia")

[1] The Action also includes the currently pending appeal, *Tran v. ERBA Diagnostics, Inc., et al.,* Case No. 17-11314 pending in the United States Court of Appeals for the Eleventh Circuit.

filed its motion to dismiss the Complaint (Dkt. No. 50). Pursuant to the Stipulation for Dismissal Without Prejudice of Defendant Transasia Filed on December 12, 2016 as Dkt. No. 51, the Court granted the stipulation and Transasia was dismissed from the Action on January 24, 2017 (Dkt. No. 53). On February 16, 2017, the Court held a hearing regarding MHM and certain of the ERBA Defendants' motions to dismiss. At the hearing, the Court granted the motions to dismiss, thereby dismissing the Action. On February 27, 2017, the Court entered the order granting Defendants' motions to dismiss (Dkt. No. 60).

On March 23, 2017, Lead Plaintiff appealed the order dismissing the Action. The appeal is styled as *Tran v. ERBA Diagnostics, Inc., et al.,* Case No. 17-11314 pending in the United States Court of Appeals for the Eleventh Circuit. On June 29, 2017, Plaintiff-Appellant Tran filed the opening brief. On August 30, 2017, certain of the ERBA Defendants as well as MHM filed their briefs. On September 27, 2017, Plaintiff-Appellant filed his reply brief. The appeal is currently pending before the Eleventh Circuit and was scheduled for oral argument on March 8, 2018. On February 14, 2018, the Parties filed a Joint Motion to Postpone Oral argument due to the pending settlement. On February 21, 2018, the Eleventh Circuit granted the motion.

**B. The Settlement**

While the appeal was pending, the Parties participated in a mediation before Beth Greenfield-Mandler of the Eleventh Circuit Kinnard Mediation Center. While the Parties did not reach a settlement at that time, the Parties continued to exchange settlement offers and demands and hold in-depth settlement discussions. Settlement discussions between Lead Plaintiff and the ERBA Defendants bore fruit on December 8, 2017. Settlement discussions between Lead Plaintiff and MHM continued and reached a settlement in principle on January 29, 2018.

**C. Defendants' Denial of Wrongdoing and Liability**

Throughout the course of the Action, Defendants have denied and continue to deny each, any and all allegations of wrongdoing, fault, liability or damage whatsoever asserted in the Action. Defendants have also denied, *inter alia*, the allegations that Lead Plaintiff or the Settlement Class have suffered damages or that Lead Plaintiff or the Settlement Class were harmed by the conduct alleged in the Action.

Defendants enter into this Stipulation solely in order to eliminate the uncertainties, burden and expense of further litigation. Nothing in this Stipulation shall be construed as an admission by either Defendants or any of the Released Parties of any wrongdoing, fault, liability, or damages whatsoever.

**D. Claims of Lead Plaintiff and Benefits of Settlement**

Lead Plaintiff believes that the claims asserted in the Action have merit. Lead Plaintiff, however, recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals. Lead Plaintiff has also taken into account the uncertain outcome and the risk of any litigation. In particular, Lead Plaintiff has considered the inherent problems of proof and possible defenses to the federal securities law violations asserted in the Action, including an adverse decision from the Eleventh Circuit, defenses asserted by Defendants during the litigation, settlement negotiations and mediation proceedings, and the likelihood that Defendants could not pay any judgment. Lead Plaintiff has therefore determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interest of the Settlement Class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,**

By and among Lead Plaintiff, on behalf of himself and on behalf of the Settlement Class, and Defendants, by and through their respective undersigned counsel that, subject to the approval

of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Released Claims as against the Released Parties shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of this Stipulation, as follows.

**1. Definitions**

In addition to the terms defined above, the following capitalized terms, used in this Stipulation shall have the meanings specified below.

1.1. "Action" means collectively, the putative class action captioned *Tran v. ERBA Diagnostics, Inc., et al.,* Case No.15-cv-24440 –Cooke/Torres (S.D. Fla.) and *Tran v. ERBA Diagnostics, Inc., et al.,* Case No. 17-11314 pending in the United States Court of Appeals for the Eleventh Circuit. The final approval of the Settlement will resolve both.

1.2. "Administrative Costs" means all costs and expenses associated with providing notice of the Settlement to the Settlement Class and otherwise administering or carrying out the terms of the Settlement. Such costs may include, without limitation: escrow agent costs, the costs of publishing the summary notice, the costs of printing and mailing the Notice and Proof of Claim, as directed by the Court, and the costs of allocating and distributing the Net Settlement Fund to the Authorized Claimants. Such costs do not include legal fees.

1.3. "Authorized Claimant" means a Claimant whose claim for recovery has been allowed pursuant to the terms of the Stipulation, the exhibits hereto, and any order of the Court.

1.4. "Business Day" means any day except Saturday or Sunday or any other day on which national banks are authorized by law or executive order to close in the State of Florida.

1.5. "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.6. "Claims" means any and all manner of claims, demands, rights, causes of action and liabilities, of every nature and description whatsoever, which may be asserted in any capacity, whether based in law or equity, arising under federal, state, local, statutory, or common law, or any other law, rule or regulation, including both known and Unknown Claims.

1.7. "Claims Administrator" means Strategic Claims Services.

1.8. "Co-Lead Counsel" or "Plaintiffs' Counsel" means The Rosen Law Firm, P.A. and Goldberg Law PC.

1.9. "Common Stock" means the shares of common stock of ERBA Diagnostics, Inc.

1.10. "Defendants" means ERBA Diagnostics, Inc., Kevin Clark, Sanjiv Suri, Mohan Gopalkrishnan, Arlene Rodriguez, Prakesh Patel, Mayer Hoffman McCann P.C., Suresh Vazirani, ERBA Diagnostics Mannheim GMbH, and Transasia Bio Medicals Ltd.

1.11. "Effective Date" means the first date by which all of the events and conditions specified in ¶9.3 of the Stipulation have been met and have occurred.

1.12. "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent at Huntington Bank. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Plaintiffs and the Settlement Class in accordance with the terms of the Stipulation and any order of the Court.

1.13. "Escrow Agent" means the Rosen Law Firm, P.A. The Escrow Agent shall perform the duties set forth in this Stipulation and any order of the Court.

1.14. "Final" when referring to the Final Judgment means exhaustion of all

possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Final Judgment, and (ii) if an appeal or request for review is filed, the day after the date the appeal or request for review is dismissed and the time for filing any request for rehearing or reconsideration has expired, or the Final Judgment is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise and the time for filing any request for rehearing or reconsideration has expired; provided, however, that any dispute or appeal relating solely to the amount, payment or allocation of attorneys' fees and expenses, or the Plan of Allocation shall have no effect on finality for purposes of determining the date on which the Final Judgment becomes Final.

1.15. "Final Judgment" means the order and judgment to be entered by the Court finally approving the Settlement and dismissing the Action, materially in the form attached hereto as Exhibit B.

1.16. "Individual Defendants" means Suresh Vazirani, Kevin Clark, Sanjiv Suri, Mohan Gopalkrishnan, Arlene Rodriguez, and Prakesh Patel.

1.17. "Lead Plaintiff" or "Plaintiff" means Nghiem Tran on behalf of himself and all other members of the Settlement Class.

1.18. "Notice" means the Notice of Pendency and Proposed Settlement of Class Action and Settlement Hearing Thereon, which is to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A-1.

1.19. "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto.

1.20. "Party" or "Parties" means all of, the parties to the Stipulation, namely Defendants and Lead Plaintiff (on behalf of himself and the Settlement Class).

1.21. "Person" means individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.22. "Plan of Allocation" means a plan or formula for allocating the Settlement Fund to Authorized Claimants after payment of Administrative Expenses, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses, and interest as may be awarded by the Court. Any Plan of Allocation is not a condition to the effectiveness of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.23. "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class substantially in the form attached hereto as Exhibit A.

1.24. "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached as Exhibit A-2.

1.25. "Released Claims" means all of the Released Plaintiffs' Claims and Released Defendants' Claims against the Released Parties.

1.26. "Released Defendants' Claims" means any and all claims, counterclaims, cross-claims, demands, rights, causes of action, suits, proceedings, claims for contribution, damages, costs, expenses and attorneys' fees, and liabilities, of every nature and description whatsoever, whether based in law, equity or otherwise, on federal, state, local, statutory or

common law, or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or in any forum by any of the Defendants against any of the Lead Plaintiff, Settlement Class Members, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action except claims relating to the enforcement of the Stipulation, Supplemental Agreement, or Final Judgment.

1.27. “Released Parties” means (i) Defendants and all of their parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, current or former directors, officers, owners, members, employees, attorneys, insurers, agents, representative, principals, assigns, subrogees, stockholders, partners, trustees, heirs, beneficiaries, servants, all persons claiming rights derivatively from them, and all other persons or entities otherwise affiliated with or related to Defendants; and (ii) Lead Plaintiff, Settlement Class Members, and each of their respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates.

1.28. “Releasing Parties” means (i) Lead Plaintiff, each and every Settlement Class Member, and each of their respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates; (ii) ERBA and MHM and their past or present subsidiaries, parents, affiliates, successors, predecessors, shareholders, creditors, officers, directors, employees, insurers, reinsurers, professional advisors, attorneys, agents, auditors, accountants, and any firm, trust, corporation or other entity in which it has a controlling interest; and (iii) all Individual Defendants, their legal representatives, heirs, successors in interest or assigns, or any person, firm, trust, corporation or other entity in which any Individual Defendant

has a controlling interest.

1.29. "Released Plaintiffs' Claims" means any and all claims, counterclaims, cross-claims, demands, rights, causes of action, suits, proceedings, claims for contribution, damages, costs, expenses and attorneys' fees, and liabilities, of every nature and description whatsoever, whether based in law, equity or otherwise, on federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims, whether or not currently asserted, that Lead Plaintiff, any or all of the Settlement Class Members or their successors or assigns, ever had, now has, or hereafter can, shall, or may have, whether directly, indirectly, representatively, derivatively, or in any other capacity, against any of the Released Parties, arising from, relating to, or by reason of, any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or that were asserted in, could have been asserted in, or relate to the subject matter of the Action, including without limitation, claims for negligence, gross negligence, negligent misrepresentation, violations of any provision or aspect of any state or federal securities law, arising out of or based upon or relating in any way to the purchase, acquisition, or trading of ERBA common stock by any Settlement Class Member during the Settlement Class Period. In case of any ambiguity, this provision should be construed as broadly as possible in favor of releasing claims against the Defendants.

1.30. "Settlement" means the settlement contemplated by this Stipulation.

1.31. "Settlement Amount" means the principal amount of One Million, Two Hundred Fifteen Thousand dollars ($1,215,000) of which One Million, One Hundred, Thousand dollars ($1,100,000) will be paid by the ERBA Defendants, and One Hundred, Fifteen Thousand

dollars ($115,000) will be paid by MHM. The Settlement Amount includes all Administrative Costs, Plaintiffs' Counsel's attorneys' fees and expenses, as allowed by the Court, Settlement Class Member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated with the Settlement.

1.32. "Settlement Class" consists of all persons and entities that purchased ERBA common stock between June 14, 2013 and November 20, 2015, both dates inclusive. Excluded from the Settlement Class are all: (i) Defendants; (ii) current and former officers and directors of ERBA and MHM; (iii) parents, spouses, or children living in the household of any person excluded under (i) or (ii) above; (iv) any legal entity more than 50% owned by any person excluded under (i) and (ii) above; (v) the heirs, successors and assigns of any person excluded under (i) and (ii) above; and (vi) any valid opt-outs.

1.33. "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

1.34. "Settlement Class Period" means the period from June 14, 2013 and November 20, 2015, inclusive.

1.35. "Settlement Fund" means all funds transferred to the Escrow Account pursuant to this Stipulation and any interest or other income earned thereon.

1.36. "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether the Settlement contained in the Stipulation is fair, reasonable and adequate, and therefore, should receive final approval from the Court.

1.37. "Unknown Claims" means all claims, demands, rights, liabilities, and causes of action of every nature and description which any Settlement Class Member or any of the

Defendants does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to opt-out or object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and the Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Final Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and the Defendants shall expressly waive and each of the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state, territory, foreign country or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. Lead Plaintiff, the Defendants, or one or more Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and the Defendants shall expressly fully, finally and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to,

conduct which is negligent, intentional, with or without malice, or a breach of fiduciary duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff and Defendants acknowledge, and the Settlement Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

**2. The Settlement Consideration**

2.1. In consideration of the full and final release, settlement and discharge of all Released Claims against the Released Parties, Defendants shall, no later than seven (7) calendar days prior to the date Notice of the Settlement must be disseminated to the Class (but not earlier than forty-five (45) days after execution of this Stipulation), cause the Settlement Amount to be paid, by wire transfer or check, to the Escrow Account, provided that the Escrow Agent shall have provided Defendants' counsel with complete wire and transfer information and instructions and a completed Form W-9 at least three (3) business days prior to the date of such payments.

2.2. Under no circumstances will ERBA, MHM, or any of the other Defendants or their insurer(s) be required to pay, or cause payment of, more than the Settlement Amount allocated to each of the Defendants as stated in ¶1.31 of this Stipulation for any reason whatsoever, including, without limitation, as compensation to any Settlement Class Member or in payment of any fees or expenses incurred by any Settlement Class Member, Co-Lead Counsel.

2.3. The Settlement Amount represents the entirety of Defendants' financial obligation under this Stipulation and in connection with the Settlement. The full payment of the Settlement Amount into the Escrow Account in accordance with this Settlement Consideration section of the Stipulation fully discharges Defendants' financial obligations under this Stipulation and in connection with the Settlement.

**3. Handling and Disbursement of Funds by the Escrow Agent**

3.1. No monies will be disbursed from the Settlement Fund until after the Effective Date, except:

(a) As provided in ¶3.4 below;

(b) As provided in ¶7.2 below;

(c) To pay Taxes and Tax Expenses (as defined in ¶4.1 below) on the income earned by the Settlement Fund. Taxes and Tax Expenses shall be paid out of the Settlement Funds and shall be considered a cost of administration of the Settlement and shall be timely paid by the Escrow Agent without prior Order of Court.;

(d) The balance remaining in the Settlement Fund after the foregoing payments, *i.e.*, the Net Settlement Fund, shall be distributed to Authorized Claimants at a time following the Effective Date, as provided below in ¶6.2.

3.2. The Escrow Agent shall invest the Settlement Fund in short term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants, their counsel, and their insurers shall have no responsibility for, interest in, or any liability whatsoever with respect to any investment or management decisions executed by the Escrow Agent. The Settlement Fund shall bear all risks related to the investments of the Settlement Amount in accordance with the guidelines set forth in this ¶3.2.

3.3. The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation or by an order of the Court.

3.4. At any time after the Court grants preliminary approval of the Settlement,

the Escrow Agent may, without further approval from Defendants or the Court, disburse at the direction of Plaintiffs' Counsel up to $150,000.00 (One Hundred and Fifty Thousand U.S. Dollars) from the Settlement Fund prior to the Effective Date to pay Administrative Costs.

3.5. No monies from the Settlement Fund shall be used to settle any other action, including without limitation any pending or threatened derivative actions.

**4. Taxes**

4.1. The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. Sec. 1.468B-1. In addition, the Escrow Agents shall timely make such elections as necessary or advisable to carry out the provisions of this ¶4.1, including the "relation-back election" (as defined in Treas. Reg. Sec. 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a) For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be Co-Lead Counsel or their designee. Co-Lead Counsel or their designee shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. Sec. 1.468B-2(k)). Such returns (as well as the election described in ¶4.1(a) hereof) shall be consistent with this ¶4.1 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the cash portion of the Settlement Fund shall be paid out of the Settlement Fund.

(b) All Taxes (including any estimated Taxes, interest or penalties)

arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their counsel or their insurers with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and expenses and costs incurred in connection with the operation and implementation of this ¶4.1 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ("Tax Expenses"), shall be paid out of the Settlement Fund, as appropriate. Defendants, their counsel, and their insurers shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be withheld under Treasury Regulation § 1.468B-2(1)(2)). Defendants, their counsel, and their insurers shall have no responsibility for, interest in, or any liability whatsoever with respect to the foregoing provided in this. The Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this.

**5. Releases and Covenants Not to Sue and Bar Order**

5.1. Upon the Effective Date, the Releasing Parties, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, regardless of whether any such Releasing Party ever seeks or obtains by any means,

including without limitation by submitting a Proof of Claim, any disbursement from the Settlement Fund, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties,.

5.2. Further, upon the Effective Date, the Releasing Parties covenant not to sue the Released Parties with respect to all such Released Claims, and shall be permanently barred and enjoined from directly, indirectly, or through a third party, asserting, commencing, prosecuting, instituting, reinstituting, intervening in, assisting, instigating, encouraging, soliciting, supporting, or in any way collaborating or participating in, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, against any of the Released Parties whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity, that in any way relates to, is based upon, arises from, or is connected with the Action or any Released Claim. Nothing contained herein shall, however, bar or enjoin the Releasing Parties from bringing any action or claim to enforce the terms of the Stipulation, Supplemental Agreement, or the Final Judgment.

**6. Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1. Under the supervision of Co-Lead Counsel, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, the Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (as defined below) to Authorized Claimants.

6.2. The Settlement Fund shall be applied as follows:

(a) To pay the Taxes and Tax Expenses described in above;

(b) To pay Administrative Costs;

(c) To pay Co-Lead Counsel's attorneys' fees and expenses and payments to the Lead Plaintiff for reimbursement of his time and expenses (the "Fee and Expense Award"), to the extent allowed by the Court; and

(d) To distribute the balance of the Settlement Fund, that is, the Settlement Fund less the items set forth in ¶ 6.2(a), (b), and (c) hereof (the "Net Settlement Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

6.3. Upon and after the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with the terms of the Plan of Allocation set forth in the Notice and any orders of the Court.

6.4. This is not a claims-made settlement, and if all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, no portion of the Settlement Fund will be returned to Defendants or any applicable insurer. Defendants, their counsel, and their insurer shall have no responsibility for, involvement in, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, the acts or omissions of the Claims Administrator or the Escrow Agent, or any losses incurred in connection therewith. No Person shall have any claims against Co-Lead Counsel, the Claims Administrator or any other agent designated by Co-Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or orders of the Court. Co-Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in

any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

6.5. If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Class Members or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, which were not previously authorized by the Court to be paid, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, including the $10.00 minimum check amount set forth in the Notice; (ii) second, to pay any additional notice and administration costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Class Members who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to a non-profit charitable organization(s) selected by Co-Lead Counsel and approved by the Court.

6.6. It is understood and agreed by the Parties that any proposed Plan of

Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a condition of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment and the releases contained therein, or any other orders entered pursuant to this Stipulation.

**7. Co-Lead Counsel's Attorneys' Fees and Reimbursement of Expenses**

7.1. Co-Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund to Co-Lead Counsel for (i) an award of attorneys' fees, (ii) reimbursement of actual costs and expenses, including the fees and expenses of experts and/or consultants, incurred in connection with prosecuting the Action, (iii) payment to the Lead Plaintiff for reimbursement of his time and expenses in connection with the Action. Defendants shall take no position with respect to the Fee and Expense Application(s).

7.2. Except as otherwise provided in this paragraph, the attorneys' fees and expenses awarded by the District Court shall be paid to Co-Lead Counsel from the Settlement Fund within five (5) Calendar Days after the date the Court enters the Final Judgment and an order awarding such fees and expenses, notwithstanding any objections to or appeals of such order or of the Final Judgment. In the event that the Effective Date does not occur, the Settlement and Final Judgment do not become Final, or the Final Judgment is reversed or modified in any way that affects the award of attorneys' fees and expenses, or the Stipulation is terminated for any other reason, then Co-Lead Counsel shall be jointly and severally obligated to refund to the Escrow Account, within seven (7) Business Days from entry of order rendering the Settlement and

Judgment non-final or from receiving notice from Defendants' counsel, either the full amount of the fees and expenses or an amount consistent with any modification of the Final Judgment with respect to the fee and expense award, including accrued interest at the same rate as is earned by the Settlement Fund. Co-Lead Counsel, on behalf of the firm and each partner, agrees that the law firm and its partners are subject to jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and each shall be jointly and severally liable for repayment of all attorneys' fees and expenses awarded by the Court. Furthermore, without limitation, Co-Lead Counsel, and the firm's partners and/or shareholders, agree that the Court may, upon application of Defendants, summarily issue orders, including, without limitation, judgments and attachment orders and may make appropriate findings of or sanctions for contempt against the firm or any of its partners and/or shareholders should the law firm fail timely to repay fees and expenses pursuant to this paragraph. Any amounts awarded by the Court to the Lead Plaintiff for reimbursement of his time and expenses shall not be paid from the Settlement Fund until after the Effective Date.

7.3. The procedure for, and allowance or disallowance by the Court of, the Fee and Expense Application are not a condition of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order of or proceedings relating to the Fee and Expense Application, or any objection to, motion regarding or appeal from any order or proceedings relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment or the releases contained therein or any other orders entered pursuant to this Stipulation.

7.4. Any award of attorneys' fees and expenses to Co-Lead Counsel or reimbursement payment to the Lead Plaintiff shall be only as approved by the Court and paid

solely from the Settlement Fund which shall reduce the settlement consideration paid to the Settlement Class accordingly. Defendants, their counsel, and their insurers shall have no responsibility for payment of Co-Lead Counsel's attorneys' fees and expenses or other award to the Lead Plaintiff beyond the obligation of Defendants to cause the Settlement Amount to be paid as set forth in ¶1.31 and ¶2.1 above. Defendants, their counsel, and their insurers shall have no responsibility for, and no liability whatsoever with respect to, any payments to Co-Lead Counsel, the Lead Plaintiff, the Settlement Class or any other Person who receives payment from the Settlement Fund.

7.5. Defendants, any current officer, employee, or director of Defendants and their counsel shall not oppose Co-Lead Counsel's application for reasonable attorney's fees and expenses or Lead Plaintiff's application for a reasonable incentive award so long as the amount of attorneys' fees does not exceed one-third of the total Settlement Amount.

**8. Class Certification**

8.1. In the Final Judgment, the Settlement Class shall be certified for purposes of this Settlement, but in the event that the Final Judgment does not become Final or the Settlement fails to become effective for any reason, all Parties reserve all their rights on all issues. For settlement purposes only, in connection with the Final Judgment, Defendants shall consent to (i) the appointment of Lead Plaintiff as the class representative, (ii) the appointment of Co-Lead Counsel as class counsel, and (iii) the certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**9. Conditions Of Settlement, Effect of Disapproval, Cancellation Or Termination**

9.1. Lead Plaintiff, on behalf of the Settlement Class, and Defendants shall each have the right to terminate the Settlement and Stipulation by providing written notice of his or its election to do so ("Termination Notice") to all other Parties within thirty (30) calendar days of:

(i) entry of a Court order declining to enter the Preliminary Approval Order in any material respect;

(ii) entry of a Court order refusing to approve this Stipulation in any material respect (other than as provided in ¶ 7.3);

(iii) entry of a Court order declining to enter the Final Judgment in any material respect;

(iv) entry of an order by which the Final Judgment is modified or reversed in any material respect by the Court, the Court of Appeals or the United States Supreme Court. In the absence of any of the events enumerated in the preceding sentence, ¶ 9.2, ¶ 9.5 or ¶ 9.6, no Party shall have the right to terminate the Agreement for any reason.

If a Party elects to terminate the Settlement pursuant to any of the events enumerated in the preceding sentence, termination will become effective within two (2) weeks of service of the Termination Notice. During these two weeks, the Parties shall use their best efforts to resolve any existing conflicts and/or deficiencies and reinstate the Settlement.

9.2. If the Settlement Amount is not paid into the Escrow Account in accordance with the terms of this Stipulation, then Lead Plaintiff, on behalf of the Settlement Class, and not Defendants, shall have the right to: (a) terminate the Settlement and Stipulation by providing written notice to Defendants at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

9.3. The Effective Date of this Stipulation shall not occur unless and until each of the following events occurs and shall be the date upon which the last in time of the following events occurs:

(a) The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

(b) The sum of $1,215,000 (One Million, Two Hundred Fifteen Thousand U.S. Dollars) has been paid into the Escrow Account, as set forth in ¶2.1;

(c) The Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Final Judgment; and

(d) The Final Judgment has become Final as defined in ¶1.14.

9.4. Upon the occurrence of the Effective Date, any and all interest or right of Defendants or their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.

9.5. If prior to final Court approval of the Settlement, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto ("Opt-Outs"), and such Persons in the aggregate purchased Common Stock during the Settlement Class Period in an amount greater than the amount specified in a separate Supplemental Agreement between the parties (the "Supplemental Agreement"), then Defendants shall have the option to terminate this Stipulation and Settlement in strict accordance with the requirements and procedures set forth in the Supplemental Agreement. The Supplemental Agreement shall not be filed with the Court unless and until a dispute among the Parties concerning its interpretation or application arises.

9.6. If any of the conditions specified in ¶9.3 above are not met (other than ¶9.3(b)), or in the event that this Stipulation is not approved by the Court, or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, then

this Stipulation shall be canceled and terminated, unless all of the Parties agree in writing to proceed with this Stipulation. None of the Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than those provided for and agreed herein. If any Party engages in a material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all the Parties.

9.7. In the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, the Parties shall be restored to their respective positions in the Action immediately prior to June 28, 2018 and they shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action shall be preserved without prejudice.

9.8. In the event that the Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

9.9. In the event the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, within seven (7) Business Days (except as otherwise provided in the Supplemental Agreement) after the occurrence of such event, the Settlement Fund, less taxes and any Administrative Costs which have either been disbursed or are chargeable (limited to $150,000), shall be refunded by the Escrow Agent to Defendants plus accrued interest by check or wire transfer pursuant to written instructions from the Defendants. At the request of Defendants,

the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Defendants pursuant to written direction from Defendants.

9.10. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the Fee and Expense Application shall constitute grounds for cancellation or termination of the Stipulation.

**10. No Admission Of Liability Or Wrongdoing**

10.1. The Parties covenant and agree that neither this Stipulation, nor the fact nor any terms of the Settlement, nor any communication relating thereto, nor the Supplemental Agreement, is evidence, or an admission or concession by any Party or their counsel, any Settlement Class Member, or any of the Released Parties, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or asserted in any such action or proceeding. This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Party, Settlement Class Member, or any of the Released Parties, or any damages or injury to any Party, Settlement Class Member, or any Released Parties. Neither this Stipulation, nor the Supplemental Agreement, nor any of the terms and provisions of this Stipulation or the Supplemental Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any, liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any Released Party, or of any infirmity

of any defense, or of any damages to the Lead Plaintiff or any other Settlement Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact or any purported liability, fault, or wrongdoing of the Released Parties or any injury or damages to any person or entity, or (b) shall otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Stipulation, the Supplemental Agreement, or the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to argue and establish that the Stipulation, Supplemental Agreement, or Final Judgment has *res judicata*, collateral estoppel, or other issue or claim preclusion effect, or to otherwise consummate or enforce the Stipulation, Supplemental Agreement, or Final Judgment, or as otherwise required by law.

**11. Miscellaneous Provisions**

11.1. Except in the event of the filing of a Termination Notice pursuant to ¶¶ 9.1, 9.2, 9.5 or 9.6 of this Stipulation or termination notice in accordance with the Parties' Supplemental Agreement, the Parties shall take all commercially reasonable actions necessary to consummate this agreement and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

11.2. The Parties shall jointly move the District Court, pursuant to Fed. R. Civ. P. 62.1, for an indicative ruling that preliminary approval of the class settlement raises a substantial issue that warrants further consideration. Promptly after filing the motion for indicative ruling, the Parties will then move the Eleventh Circuit Court of Appeals for a stay of the appeal pursuant to 11th Cir. Rule 12.1-1(a) and, if the District Court grants the motion for an indicative ruling, the Parties will move the District Court for preliminary approval of the Settlement. The Parties will move for preliminary approval by filing the Stipulation and ancillary documents with the District Court and applying for entry of the Preliminary Approval Order, substantially in the form attached

hereto as Exhibit A, and for the scheduling of a Final Approval Hearing for consideration of, inter alia, final approval of the Settlement. The Parties shall use their best efforts to obtain preliminary approval of the Settlement as soon as practicable.

11.3. Lead Plaintiff, solely on his own behalf, releases all claims derivatively on behalf of ERBA against the Defendants that he may hold on the basis of the allegations raised in this Action

11.4. The Parties and their counsel represent that they will not encourage or otherwise influence (or seek to influence) any Settlement Class Members to request exclusion from, or object to, the Settlement or any part thereof, including the Fee and Expense Application(s).

11.5. Each of the attorneys executing this Stipulation, any of its exhibits, or any related settlement documents on behalf of any Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Party he or she represents.

11.6. Lead Plaintiff and Co-Lead Counsel represent and warrant that Lead Plaintiff is a Settlement Class Member and none of the Lead Plaintiff's claims or causes of action against one or more Defendants in the Action, or referred to in this Stipulation, or that could have been alleged against one or more Defendants in the Action, have been assigned, encumbered, pledged, sold, collateralized, or in any manner transferred in whole or in part.

11.7. This Stipulation and its Exhibits, together with the Supplemental Agreement, constitutes the entire agreement between the Parties related to the Settlement and supersedes any prior agreements including all prior and contemporaneous oral or written agreements, promises, representations, understandings, and other communications between the Parties relating thereto, including any memoranda of understanding. No representations,

warranties or inducements have been made to or relied upon by any Party concerning this Stipulation, other than the representations, warranties and covenants expressly set forth herein and in the Supplemental Agreement. Lead Plaintiff, on behalf of himself and the Settlement Class, acknowledges and agrees that any and all other representations and warranties of any kind or nature, express or implied, are specifically disclaimed and were not relied upon in connection with this Stipulation. Except as otherwise provided herein, each Party shall bear its own costs.

11.8. This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their counsel or their respective successors in interest.

11.9. This Stipulation shall be binding upon, and shall inure to the benefit of, the Parties and their respective agents, successors, executors, heirs, and assigns.

11.10. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.11. This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall constitute valid execution of the Stipulation as if all signatories hereto had executed the same document. Copies of this Stipulation executed in counterpart shall constitute one agreement.

11.12. This Stipulation, the Settlement, and any all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of Florida without regard to conflict of laws principles.

11.13. The Court shall retain jurisdiction with respect to the implementation and

enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

11.14. The Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.15. All agreements by, between or among the Parties, their counsel and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

11.16. The Parties shall not assert or pursue any action, claim or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure and/or the Private Securities Litigation Reform Act of 1995 in connection with the Action, the Settlement, the Stipulation or the Supplemental Agreement. The Parties agree that the Action was resolved in good faith following arm's-length bargaining, in full compliance with applicable requirements of good faith litigation under the Securities Exchange Act of 1934, Rule 11 of the Federal Rules of Civil Procedure and/or the Private Securities Litigation Reform Act of 1995.

11.17. Any failure by any of the Parties to insist upon the strict performance by any other Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be

performed by the other Parties to this Stipulation.

11.18. The waiver, express or implied, by any Party of any breach or default by any other Party in the performance of such Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of June 28, 2018.

Respectfully submitted:

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A**

________________________
David C. Pollack
Fla. Bar No. 362972
Joshua D. Munn
Fla. Bar No. 98034
Andrea N. Nathan
Fla. Bar No. 16816
Jason S. Koslowe
Fla. Bar No.122758
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3435
Facsimile: (305) 789-2651

*Counsel for the ERBA Defendants*

**MCDERMOTT WILL & EMERY LLP**

By:________________________
Anthony Upshaw
Fla. Bar No. 861091
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131-2184

**THE ROSEN LAW FIRM, P.A.**

________________________
Laurence Rosen
Florida Bar No. 0182877
lrosen@rosenlegal.com
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

**GOLDBERG LAW PC**
Michael Goldberg, Esq.
13650 Marina Pointe Dr. Suite 1404
Marina Del Rey, California 90292
Phone: 1 800-977-7401
Fax: 1 800-536-0065

*Co-Lead Counsel for Lead Plaintiff and the Class*

performed by the other Parties to this Stipulation.

11.18. The waiver, express or implied, by any Party of any breach or default by any other Party in the performance of such Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of June 28, 2018.

Respectfully submitted:

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A**

________________________
David C. Pollack
Fla. Bar No. 362972
Joshua D. Munn
Fla. Bar No. 98034
Andrea N. Nathan
Fla. Bar No. 16816
Jason S. Koslowe
Fla. Bar No.122758
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3435
Facsimile: (305) 789-2651

*Counsel for the ERBA Defendants*

**MCDERMOTT WILL & EMERY LLP**

By:________________________
Anthony Upshaw
Fla. Bar No. 861091
333 SE 2nd Avenue, Suite 4500
Miami, Florida 33131-2184

**THE ROSEN LAW FIRM, P.A.**

________________________
Laurence Rosen
Florida Bar No. 0182877
lrosen@rosenlegal.com
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

**GOLDBERG LAW PC**
Michael Goldberg, Esq.
13650 Marina Pointe Dr. Suite 1404
Marina Del Rey, California 90292
Phone: 1 800-977-7401
Fax: 1 800-536-0065

*Co-Lead Counsel for Lead Plaintiff and the Class*

Phone: (305) 347-6540
Fax: (305) 675-8031
Email: aupshaw@mwe.com

Timothy E. Hoeffner (*pro hac vice*)
Seth L. Friedman (*pro hac vice*)
340 Madison Avenue
New York, NY 10173
Phone: (212) 547-5595
Email: thoeffner@mwe.com
Email: sfriedman@mwe.com

Nicole Figueroa
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Phone: (214) 295-8062
Fax: (972) 767-0190
Email: nfigueroa@mwe.com

*Counsel for Defendant Mayer Hoffman McCann P.C.*