**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 15-cv-24440-COOKE/TORRES

NGHIEM TRAN, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

        v.

ERBA DIAGNOSTICS, INC., SURESH VAZIRANI, KEVIN D. CLARK, SANJIV SURI, MOHAN GOPALKRISHNAN, ARLENE RODRIGUEZ, PRAKASH PATEL, ERNESINA SCALA, ERBA DIAGNOSTICS MANNHEIM GMbH, TRANSASIA BIO MEDICALS LTD., and MAYER HOFFMAN MCCANN P.C.

    Defendants.

**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. FACTS .................................................................................................................................. 2

    A. Procedural history ........................................................................................................... 2

    B. The Complaint's allegations ........................................................................................... 2

III. THE COURT SHOULD FINALLY CERTIFY THE CLASS ........................................... 4

IV. THE COURT SHOULD FINALLY APPROVE THE SETLEMENT ............................. 5

    A. Standards ......................................................................................................................... 5

    B. The Settlement is Fair, Adequate, and Reasonable Under the *Bennett* Factors .................. 6

        1. Likelihood of success at trial ..................................................................................... 6

        2. Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness .......................................................................... 8

        3. The Complexity, Expense, and Likely Duration of Continued Litigation .. 9

        4. The Reaction of the Class ...................................................................................... 10

        5. The Stage of Proceedings ...................................................................................... 10

    C. Negotiations were conducted at arm's length and the Settlement is not the result of fraud or collusion ............................................................................................................... 11

    D. The Recommendation of Experienced Counsel Favors Approval of the Settlement ....... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
   No. 00-14017-CIV., 2002 WL 1162422 (S.D. Fla. May 7, 2002) ............................................. 10

*Behrens v. Wometco Enterprises, Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................. 7, 10, 11, 12

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ................................................................................................ 5, 6

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982) .................................................................................................. 5

*Canupp v. Sheldon*,
   No. 204-CV-260-FTM-99DNF, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) ...................... 6

*Cifuentes v. Regions Bank*,
   No. 11 CV 23455 FAM, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) .................................... 5

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .............................................................................................. 6, 12

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...................................................................................... 6

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 11

*Hutton on behalf of MasTec, Inc. v. Mas*,
   No. 06-20999-CIV, 2006 WL 8430549 (S.D. Fla. Dec. 12, 2006) ........................................... 9

*In re "Agent Orange" Prod. L*iab. Litig.,
   611 F. Supp. 1396 (E.D.N.Y. 1985) .......................................................................................... 9

*In re Atmel Corp. Derivative Litig.*,
   No. C 06-4592 JF (HRL), 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) .............................. 11

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................ 8, 12

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ................................................................................................... 12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
 279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................................... 9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
 No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................... 9

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................ 11

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000), *as amended* ................................................................. 10

*In re Oracle Sec. Litig.*,
 No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) .......................... 12

*In re Rite Aid Corp. Sec. Litig.*,
 146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................ 8

*In re Smith*,
 926 F.2d 1027 (11th Cir. 1991) .............................................................................. 6, 12

*In re Sunbeam Sec. Litig.*,
 176 F. Supp. 2d 1323 (S.D. Fla. 2001) ................................................................... 7, 11

*In re U.S. Oil & Gas Litig.*,
 967 F.2d 489 (11th Cir. 1992) ...................................................................................... 5

*Lipuma v. Am. Express Co.*,
 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ......................................................................... 8

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) ...................................................................................................... 4

*Ressler v. Jacobson*,
 822 F. Supp. 1551 (M.D. Fla. 1992) ........................................................................... 10

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
 297 F.R.D. 683 (S.D. Fla. 2014) ................................................................................... 6

*Schulte v. Fifth Third Bank*,
 805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................................... 11

*Strube v. Am. Equity Inv. Life Ins. Co.*,
 226 F.R.D. 688 (M.D. Fla. 2005) ................................................................................ 12

*Vinh Nguyen v. Radient Pharm. Corp.*,
 No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................. 10

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) ............................................................................................ 5

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
   No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) ............................ 7

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................................. 1, 4

Fed. R. Civ. P. 23 ...................................................................................................................... 4, 5

**Other Authorities**

*Newberg on Class Actions,* § 11.51 ............................................................................................ 10

`

## MOTION

Nghiem Tran ("Class Representative" or "Plaintiff"), upon the accompanying Memorandum of Law and the accompanying Declaration of Jonathan Horne In Support of Final Approval of Class Action and An Award of Attorneys' Fees and Reimbursement of Expenses ("Horne Dec.") and the exhibits attached thereto, hereby moves the Court pursuant to Fed. R. Civ. P. 23(e) for final approval of the Settlement of this action for $1,215,000 and the Plan of Allocation. The Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

The Proposed Judgment will be submitted with Plaintiff's reply papers, which is after the deadline for objecting to the Settlement.

## MEMORANDUM OF LAW

### I.      PRELIMINARY STATEMENT

This case did not have an auspicious beginning. When he filed his case, Plaintiff published the Congressionally mandated notice to the Class, which advised class members that they could seek to become lead plaintiffs and have their choice of counsel selected as lead counsel. Despite this notice, Plaintiff was the only one interested in the job.

And indeed, this was a difficult case. The Private Securities Litigation Reform Act (the "PSLRA") imposes substantial pleading burdens in securities class actions like this one. Among other things, to survive a motion to dismiss, the plaintiff must plead particularized facts which show that the inference that defendants acted with scienter is the most plausible of competing inferences. The PSLRA also stays discovery until the court sustains the motion to dismiss, preventing the plaintiff from pleading the requisite inference using internal documents. The Court found that Plaintiff had not met the PSLRA's requirements, and dismissed the case.

But, having fought hard and well before the Court, and having continued the fight on appeal, Plaintiff was able to reach agreements to settle this case for $1.215 million. The Settlement recovers about 14.5% of Plaintiff's pie-in-the-sky maximum damages estimate, or a greater percentage than the average securities class action with similar damages – most of which are not settled on appeal. The Settlement is an excellent result, and the Court should approve it.

The Class agrees.  Pursuant to the Court's Preliminary Approval Order, the claims administrator mailed more than 5,600 Notice and Claim Forms to potential Class Members or nominees. *See* Declaration of Josephine Bravata Concerning The Mailing of The Notice Of

1

Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form ("Bravata Dec."). ¶6. The Bravata Dec. is attached as Exhibit 1 to the Horne Dec. To date, no class members have submitted any objections or requests for exclusion. *Id.* at ¶¶12-13. The deadline to submit an exclusion was December 10, 2018, and the deadline to object is January 9. *Id.*

The Settlement results from extended arm's-length negotiations among the Settling Parties, which started and ended two times before ultimately culminating in the Settlement.

For these reasons and those set forth below, Class Representatives respectfully submit that the Court should approve the Settlement because it is fair, reasonable and adequate.

## II.   FACTS

### A.   Procedural history

This action was filed in December 2015. The Court appointed Nghiem Tran as lead plaintiff in April 2016. In June of 2016, Lead Plaintiff filed his Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), Dkt. # 34, which both the ERBA Defendants and MHM moved to dismiss, dkt. # 40, 41. In February 2017, the Court granted the motions to dismiss. Dkt. # 60.

Plaintiff and the ERBA Defendants began settlement discussions during the pendency of the motions to dismiss. Horne Dec. ¶4. These discussions did not bear fruit.

Class Representative timely appealed. The parties appeared at a mediation before the Circuit Mediator prior to beginning briefing on the appeal. *Id.* The mediation broke apart, but the Parties resumed settlement discussions after they had finished briefing the appeal. *Id.* Before oral argument, Class Representative reached separate settlements with the ERBA Defendants and MHM. *Id.* The Parties drafted the settlement documents, and then filed the motions necessary to return jurisdiction to this Court for the limited purpose of allowing it to consider approving the Settlement. In September 2018, the Court granted Preliminary Approval to the settlement.

### B.   The Complaint's allegations

Plaintiff alleges that from June 14, 2013 through November 20, 2015 (the "Class Period"), ERBA's financial statements contained materially false and misleading statements.

ERBA is a vertically integrated medical diagnostics company with many subsidiaries and a complex accounting arrangement that calls for one particular subsidiary to pay the other subsidiaries' expenses and to have the other subsidiaries reimburse it. ¶130.[1] ERBA's accounting

---

[1] Citations to "¶__" are to Paragraphs of the Complaint.

2

arrangement generates a host of intercompany transactions, and requires tip-top accounting staff and practices. *Id.*

Public companies like ERBA are ***strongly encouraged*** to maintain adequate internal controls over financial reporting to ensure that the financial information they report to investors is accurate. They are, however, not merely encouraged but ***required*** to annually evaluate these controls, state whether there were any material weaknesses, and state what those weaknesses are.

ERBA disclosed during the Class Period that its internal controls over financial reporting were materially inadequate, and blamed a lack of qualified personnel. For example, ERBA's 2014 10-K, filed during the Class Period, informed investors that:

> As of the end of the period covered by this Annual Report on Form 10-K, our management evaluated, with the participation of our principal executive officer and principal financial officer, the effectiveness of our internal control over financial reporting. This evaluation was conducted using the framework in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based upon that evaluation, our management concluded that our internal control over financial reporting was not effective as of December 31, 2014, because ***there was a material weakness in our internal control over financial reporting***. A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis. ***Specifically, through that evaluation, our management identified a material weakness in our internal control over financial reporting as a result of our inadequate staffing of our financial accounting office, which has resulted in, among other things, at times us being unable to provide timely account reconciliations.*** Our remediation efforts to address this material weakness are ongoing and include, among other things, hiring additional qualified personnel and evaluating or undertaking certain improvements to our systems and processes, which, if successful, we believe will be sufficient to provide us with the ability to remediate or cure this material weakness in the future. If this material weakness is not remediated or cured, then this deficiency in internal control over financial reporting could adversely affect the timing and accuracy of our financial reporting.

ERBA 2014 10-K, filed May 15, 2015, at 84 (emphasis added).

Plaintiff alleges, however, that Defendants did not disclose every reason that ERBA's internal controls were misleading. In particular, Defendants omitted to disclose that ERBA did not maintain contemporaneous records of its transactions, forcing them to backdate accounting entries and reconstruct past transactions. ¶132. Because Defendants were required to disclose every material deficiency, Plaintiff alleges their statements were misleading.

3

Defendants also overstated ERBA's financial results. On November 20, 2015, ERBA announced that it would restate two years of financial statements, thereby reducing net income by approximately $3.0 – 4.0 million.[2]

Finally, throughout the Class Period, Defendants maintained that ERBA "is not materially affected by order backlog or working capital issues" and that its "financial condition remains strong with significant cash [and] overall significant working capital." E.g. ¶73. also denied that it had any cash flow difficulties. Plaintiff identified former ERBA employees who pointed to examples of persistently unpaid invoices and vendors, and resulting financial hardship. ¶¶100-125. Defendants, however, maintained that all Plaintiff had shown was that ERBA failed to pay certain obligations as they came due, not that it could not do so.

On November 10, 2014, May 15, 2015, and June 26, 2015, ERBA announced unexpectedly poor quarterly results. ¶¶ 149, 152, 155. The true undisclosed causes of the poor results was that ERBA's vendors had cut it off for non-payment, meaning that it could no longer manufacture certain products, causing it to lose customers. ERBA's stock price fell on each day following poor earnings.

On April 21, 2015, ERBA announced that it had received a letter from the NYSE threatening to delist it for failing to timely file its 2014 10-K, which had been delayed because of ERBA's material deficiencies in internal controls. ¶150. ERBA's stock price fell the following day.

On November 20, 2015, ERBA announced that its 2013 and 2014 annual financial statements, as well its Q1-Q3 2015 quarterly financial statements, could no longer be relied upon. ERBA blamed materially out of balance accounts and erroneously recorded transactions relating to intercompany records and other accounts, which it claimed it had just discovered. ¶157. ERBA's stock price fell the following day.

## III. THE COURT SHOULD FINALLY CERTIFY THE CLASS

To approve a class settlement, courts must find that class treatment is appropriate. It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged federal securities laws violations. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[P]laintiffs to pool

---

[2] ERBA later increased the estimate of the overstatement to $6.0-8.0 million. ERBA has yet to file restated financial statements.

4

claims which would be uneconomical to litigate individually …[M]ost of the [P]laintiffs would have no realistic day in court if a class action were not available"). The Court previously preliminary certified a Class in this action for settlement purposes. Dkt. # 75. Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now finally certify the Class.

### IV. THE COURT SHOULD FINALLY APPROVE THE SETLEMENT

#### A. Standards

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982). As the court in *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) noted:

> Complex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotations omitted). "The Court [must] make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd,* 893 F.2d 347 (11th Cir. 1989). Approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *Bennett*, 737 F.2d at 987

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery, and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (3) the complexity, expense and duration of litigation; (4) the substance and amount of opposition to the settlement; and (5) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *accord Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 WL 1153772, at *4 (S.D. Fla. Mar. 20, 2014).

5

Finally, in evaluating a settlement, the court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

### B. The Settlement is Fair, Adequate, and Reasonable Under the *Bennett* Factors

#### 1. Likelihood of success at trial

The first *Bennett* factor is "the likelihood of success at trial." *Bennett*, 737 F.2d at 986. This is the most important factor and is weighed against the relief proposed by the settlement. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007) (internal quotations omitted). This factor favors settlement so long as there is substantial doubt about the Class's ability to prevail at trial. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (mere fact of potential loss at trial weighed in favor of settlement). Here, the likelihood of success at trial supports approval.

First, Plaintiff's claims were dismissed. In the 12-month period ending June 30, 2018, the Eleventh Circuit affirmed 86.1% of all civil appeals.[3] Plaintiff faced daunting odds to merely revive this Action at the Eleventh Circuit – let alone to take the discovery they need, to survive summary judgment, trial, post-trial motions, and any appeals.

Second, at trial, Plaintiff must prove every element of his cause of action and negate every affirmative defense to recover. And to be entitled to their maximum damages, the figure this brief uses as its reference point, Class Representative must make every factual showing demanded by their theory of the case. Unlike Plaintiff, Defendants only need to win on one dispositive issue. Thus, if there are numerous issues on which the jury could go either way, a plaintiff's likelihood of success on the merits is not about even; it is close to zero.

This case presents many such issues. As set out above, Defendants would argue at trial that their disclosure adequately informed the public regarding ERBA's internal control issues and that

---

[3] Excluding cases in which the U.S. was a party. Go to http://www.uscourts.gov/report-names/statistical-tables-federal-judiciary, download Table B-5.

ERBA was able to pay its obligations as they came due but was merely late on a few payments to vendors – like many businesses.

Defendants would have argued that they did not make false statements with *scienter*. Securities fraud claims, because they demand that plaintiffs show not just negligence but at least severe recklessness, are difficult to prove at trial. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330 (S.D. Fla. 2001). As to the failure to disclose internal control deficiencies, Defendants would argue that their statement was, as far as the securities laws are concerned, a mere foot fault, and cannot support claims that Defendants acted with *scienter* and, in fact, Defendants proactively disclosed to investors that ERBA's internal controls had at least one material deficiency. As to the cash flow statements, Defendants would argue that the failure to pay certain vendors was not enough to show Defendants that ERBA could not pay its debts as they came due.

And Defendants would argue that even if Plaintiff showed Defendants' statements were false, and even if Plaintiff showed that Defendants made the statements with scienter, Plaintiff still did not show that Defendants' false statements caused Plaintiff's losses. Instead, Defendants would claim that ERBA's stock price reacted to other information disclosed at the same time as the correction of the false statements. Defendants would also argue that the Class was not affected by the decline, as the value of ERBA stock rebounded shortly following many of the drops.

Finally, Defendants would have argued that the market knew the truth that ERBA's internal controls were deficient. Whether truth was on the market would be resolved by expert testimony, and it is notoriously hard to predict whose expert the jury would believe. *See, e.g., Zuckerman v. Smart Choice Auto. Grp., Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

Thus, Defendants have many different ways to win available to them. Yet, as further explained below, the Settlement nevertheless recovers 14.5% of maximum estimated damages – an excellent recovery. This factor weighs in favor of approval.

## 2. Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness

The second and third factors, which courts usually combine, require the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005). The Court must evaluate the settlement "in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (internal quotations omitted). And as courts in this District emphasize, the essence of settlement is compromise and requires "an abandoning of highest hopes." *Id.* (internal quotations omitted).

Class Representative's damages expert concluded that the aggregate damages here are ***at most*** $8.4 million. Horne Dec. ¶ 5. To arrive at a "best case" maximum estimate of damages, Plaintiff's expert made several very optimistic or ad hoc assumptions. *Id.* In a securities class action, plaintiffs typically start to measure per-share damages as the decline in value of the stock price following disclosures that reveal the fraud, called corrective disclosures. Here, the expert assumed that Plaintiff would be able to prove that every one of the 5 corrective disclosures set out in the Complaint was a revelation that Defendants' statements had been false. *Id.* When measuring damages, experts must then account for the impact of non-fraud related news disclosed at the same time as the corrective disclosures. Damages are particularly apt to be slashed when the corrective disclosure is a release of the company's annual or quarterly results as at that time the company discloses a great deal of unrelated information. Here, though, the expert assumed that the entirety of the drop following the corrective disclosures was attributable to the fraud, even though 3 of the 5 corrective disclosures were made in earnings releases. *Id.* Finally, where including a second day's drop would increase damages, Plaintiff's expert made the ad hoc assumption that the second day's drop was likewise attributable to the fraud. *Id.*

With these Pollyannaish assumptions, Class Representatives' expert estimated that total maximum damages are $8.4 million. The $1.215 million Settlement recovers 14.5% of that maximally optimistic estimate, an excellent recovery, returning significantly higher than the average settlement in cases of this size. *Securities Class Action Settlements – 2016 Review and Analysis*, by Laarni T. Bulan, *et al.* (Cornerstone 2017), at 8 (attached as Exhibit 3 to the Horne Dec.); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since

1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses.").

Additionally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Moreover, ERBA has not filed any quarterly or annual financial statements since August 2015. It is currently funding its operations through a revolving loan from its parent. Should the parent pull its funding, as it might if it ERBA risked being hit with an $8.4 million judgment, ERBA would likely not survive. Horne Dec. ¶ 6.

Thus, this factor favors approval.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation

"A securities case, by its very nature, is a complex animal." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (internal quotations omitted). Further, complex class actions are "notably difficult and notoriously uncertain." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotations omitted). The Court should take into account the significant burden this case would impose on it should the case proceed further, including trial. *Hutton on behalf of MasTec, Inc. v. Mas*, No. 06-20999-CIV, 2006 WL 8430549, at *2 (S.D. Fla. Dec. 12, 2006).

Here, should the Eleventh Circuit reverse, Plaintiff would have to prove their claims through discovery. Discovery in securities cases is generally costly and involves hundreds of thousands of documents produced by both Defendants and third parties. Finding these documents is a time-consuming and risky process, involving negotiating over search terms and custodians. While producing relevant documents is primarily the producing party's burden, a plaintiff who fails to sufficiently appreciate the importance of a search term or custodian the defendants should employ risks losing his case by missing key documents.

Moreover, in this case, much of this discovery would concern complex accounting issues. Plaintiff would have to hire accounting experts to seek, interpret, and communicate this complicated accounting evidence.

In addition, securities cases also require complex and costly expert testimony on market efficiency, loss causation and damages. Class Representative has already retained a damages

9

expert. Class Representative would likely have to retain a financial expert, who would testify on market efficiency, loss causation, and any truth-on-the-market defense. Defendant would likely similarly retain a financial expert, a damages expert, a market efficiency expert, and an accounting expert, each of whom would testify on the same subjects as Class Representative's corresponding expert. In Class Counsel's experience, even preparing the case for trial would cost more than $400,000. *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *8 (C.D. Cal. May 6, 2014) (in similar case where Rosen Law Firm was lead counsel, settled weeks before trial, class counsel sought reimbursement of litigation costs of about $420,000).

This factor favors approval.

### 4. The Reaction of the Class

The reaction of class members to a proposed settlement is a significant factor to be considered and the absence of objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV., 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement").

The Claims Administrator mailed 5,699 notice claim packets to potential Class Members and nominees. *See* Bravata Dec. ¶6. The Notice apprised Settlement Class Members of their right to object to the Settlement, the Plan of Allocation, or to Lead Counsel's application for attorneys' fees and expenses, and the procedure to object or seek exclusion. *Id.* at Ex. A. With a January 3, 2019 filing deadline, to date, there have been no objections to any part of the settlement. *Id.* at ¶12. And, with the exclusion deadline passed, no Class Members have opted out of the Settlement. *Id.* at ¶13. The deadline to opt out was December 10, 2018. *Id.*

### 5. The Stage of Proceedings

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544. "[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th

Cir. 2000), *as amended* (June 19, 2000) (internal quotations omitted).[4] Rather, "[t]he pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011).

Here Class Representative had sufficient understanding of the strengths and weaknesses of their case. Class Representative investigated the Class's claims, speaking with more than a dozen former employees. Horne Dec. ¶ 7. He briefed, and lost, a motion to dismiss. *Id.* He then briefed an appeal. *Id.* He engaged in lengthy settlement discussions with Defendants over the course of almost a year. *Id.*

Thus, this factor favors approval. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### C. Negotiations were conducted at arm's length and the Settlement is not the result of fraud or collusion

"[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions,* § 11.51 at 11.88 (4th ed. 1992). Here, the negotiations were at arm's-length at all times.

Indeed, the negotiations were quite fraught. Plaintiff and the ERBA Defendants first attempted to negotiate a settlement while the case was still before this Court. They were not successful. Horne Dec. ¶ 4. The parties tried again with the Eleventh Circuit-sponsored mediation after Plaintiff filed his appeal, but the mediation was not successful. *Id.* Had there been any collusion, Plaintiff and the Defendants would not have twice attempted and failed to negotiate a settlement. *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (the mediator's participation "weighs considerably" against collusiveness); *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non- collusive nature.")

---

[4] Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

11

Thus, there was no fraud or collusion, and negotiations were at arm's length; the Court should approve the settlement. *Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1345.

### D. The Recommendation of Experienced Counsel Favors Approval of the Settlement

The Court is entitled to rely on the judgment of counsel, and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *accord Smith*, 926 F.2d at 1028; *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 703 (M.D. Fla. 2005). Lead Counsel strongly endorses the Settlement. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Id.* at 703. Here, the Settlement is fair, reasonable, and adequate. Horne Dec. ¶ 9.

## IV. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

The Plan of Allocation was formulated with the aid of an experienced consultant. Horne Dec. ¶ 8. The Plan of Allocation was designed to reimburse class members to the extent of their damages under the securities laws. *Id.; see also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable"). After taking into account lack of loss causation and the timing of Class Members' stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. Horne Dec. ¶ 8. The Net Cash Settlement Amount is distributed on a *pro rata* basis depending on Class Members' recognized losses. *Id.* Accordingly, the Plan of Allocation is fair and adequate and should be approved. *Id.* ¶ 9.

## V. CONCLUSION

For the reasons stated herein and in the Horne Declaration, the Court should finally approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate and enter the proposed Judgment.

Dated:  December 26, 2018	Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

   /s/ Jonathan Horne
Jonathan Horne (pro hac vice)
Laurence M. Rosen
Fla. Bar No. 0182877
275 Madison Avenue, 34th Floor
New York, New York 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, December 26, 2018 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen

14