`

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-24440-COOKE/TORRES

| | |
|---|---|
| NGHIEM TRAN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | |
| ERBA DIAGNOSTICS, INC., SURESH VAZIRANI, KEVIN D. CLARK, SANJIV SURI, MOHAN GOPALKRISHNAN, ARLENE RODRIGUEZ, PRAKASH PATEL, ERNESINA SCALA, ERBA DIAGNOSTICS MANNHEIM GMbH, TRANSASIA BIO MEDICALS LTD., and MAYER HOFFMAN MCCANN P.C. | |
| Defendants. | |

**CLASS REPRESENTATIVE'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF LAW IN SUPPORT**

`

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | CLASS COUNSEL'S EFFORTS FOR THE CLASS. | 2 |
| III. | THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED | 3 |
| | A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in the Eleventh Circuit | 3 |
| | B. The Requested Fee is Reasonable Under the *Camden* factors | 3 |
| |     1. Awards in similar cases | 4 |
| |     2. Time and Labor Required | 5 |
| |     3. The Novelty and Difficulty of the Questions Involved | 6 |
| |     4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys | 7 |
| |     5. Preclusion of Other Employment | 8 |
| |     6. The Customary and Contingent Nature of the Fee | 8 |
| |     7. The Results Obtained | 9 |
| |     8. The "Undesirability" of the Case | 11 |
| | C. Important Public Policy Considerations Support The Requested Fees | 11 |
| | D. Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained. | 12 |
| | E. Payments to Class Representatives | 13 |
| IV. | CONCLUSION | 13 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ..................................................................................... 11

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) .................................................................................................................. 11

*AOL Time Warner, Inc. Sec.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) .................................. 5

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ..................................................................................... 6, 8, 9, 11

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................................... 3

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................................................. 3, 4

*Cifuentes v. Regions Bank*,
  No. 11 CV 23455 FAM, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ................................... 12

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................. 7

*Dowdell v. City of Apopka, Fla.*,
  698 F.2d 1181 (11th Cir. 1983) ................................................................................................ 11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................................................... 9

*Heritage Bond Litig.*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................. 4

*In re "Agent Orange" Prod. L*iab. Litig.,
  611 F. Supp. 1396 (E.D.N.Y. 1985) ......................................................................................... 10

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................. 9

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................................................................... 9, 12, 13

*In re Gen. Instrument Sec. Litig.*,
 209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................................ 4

*In re Genta Sec. Litig.*,
 No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008) .................................. 12

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................ 12

*In re Lease Oil Antitrust Litig. (No. II)*,
 186 F.R.D. 403 (S.D. Tex. 1999) ...................................................................................... 5

*In re Rite Aid Corp. Sec. Litig.*,
 146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................... 10

*In re Sterling Fin. Corp. Sec. Class Action*,
 No. CIV.A. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ....................................... 6

*In re Sunbeam Sec. Litig.*,
 176 F. Supp. 2d 1323 (S.D. Fla. 2001) ........................................................................... 6, 8

*Ingram v. The Coca-Cola Co.*,
 200 F.R.D. 685 (N.D. Ga. 2001) ....................................................................................... 6

*Mashburn v. Nat'l Healthcare, Inc.*,
 684 F. Supp. 679 (M.D. Ala. 1988) ................................................................................... 6

*Missouri v. Jenkins by Agyei*,
 491 U.S. 274 (1989) ........................................................................................................ 6

*Pace v. Quintanilla*,
 No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .............................. 8

*Pinto v. Princess Cruise Lines, Ltd.*,
 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................................... 6, 9, 13

*Ressler v. Jacobson*,
 149 F.R.D. 651 (M.D. Fla. 1992) .............................................................................. passim

*Robbins v. Koger Props.*,
 116 F.3d 1441 (11th Cir. 1997) (reversing ........................................................................ 9

*Vinh Nguyen v. Radient Pharm. Corp.*,
 No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................... 7

*Waters v. Int'l Precious Metals Corp.*,
 190 F.3d 1291 (11th Cir. 1999) ........................................................................................ 6

*Wolff v. Cash 4 Titles*,
   No., 03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...................................... 5, 11

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) .................................. 7

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................................... 1

`

## MOTION

Nghiem Tran ("Class Representative" or "Lead Plaintiff"), upon the accompanying Memorandum of Law and the accompanying Declaration of Jonathan Horne In Support of Final Approval of Class Action and An Award of Attorneys' Fees and Reimbursement of Expenses ("Horne Dec.") and the exhibits attached thereto, hereby moves the Court pursuant to Fed. R. Civ. P. 23(e) for an Order: (1) awarding attorneys' fees in the amount of $405,000; (2) reimbursement of $24,299.15 in expenses incurred in prosecuting this action; and (3) an award of $5,000 to the Class Representative.

A [Proposed] Order approving the requested award of attorneys' fees and expenses will be filed with Class Representative's Reply in Further Support of this Motion.

## MEMORANDUM OF LAW

### I.   PRELIMINARY STATEMENT

A plaintiff who files a securities class action must issue notice to potential class members advising them that an action was filed and that they may move to be appointed lead plaintiff. Ordinarily, such notice draws perhaps half a dozen movants represented by leading plaintiffs' securities law firms, all vying to represent the class.

Not here. Plaintiff was the only movant seeking appointment in this undesirable case, and his counsel were the only ones willing to take on the role of lead counsel.

Plaintiff zealously represented the proposed class, filing, investigating, and researching two complaints, opposing two lengthy motions to dismiss filed by leading firms, and, after the court's dismissal, fully briefing an appeal against these same firms.

Plaintiff now proposes to settle this case for $1.215 million. That is an exceptional result. Class Representatives' damages expert, making numerous optimistic assumptions, estimates that if the Class won on every point at trial, damages could reach as high as $8.4 million. Thus, the Settlement recovers 14.5% of the maximum conceivable damages – against a median of 10.8% in cases with similar damages. That Defendants are willing to settle the case for such a large percentage of the Class's losses, reflects the excellent and tenacious work Plaintiff engaged in to turn this undesirable case into a credible threat.

The Class supports the result. To date, there have been no objections from Class Members, period, whether to the settlement itself or to any aspect of the request for fees. No Class Members have opted out of the Settlement.

1

This is a meritorious action that returns to class members more than the typical class action. The case was so difficult that had Lead Counsel not pursued it, no other firm would have. Courts in this district typically award between 30% or $33^{1/3}$% in securities class action settlements they approve. In light of the trying circumstances and the necessity of awarding sufficient fees to encourage meritorious lawsuits like this one to be filed and pursued, the Court should pick the higher of the two, and grant an award of one third of the Gross Settlement Fund.

Class Representative also requests reimbursement of Class Counsel's actual litigation expenses in the amount of $24,299.15. These expenses are reasonable, and are of the kind that attorneys usually expense to their clients.

In the Eleventh Circuit, and throughout the Nation, class representatives are often granted service awards from the settlement to compensate them for their time and the risks incurred. Mr. Tran requests a service award of $5,000. Mr. Tran has shown diligence and dedication to this case and has made personal sacrifices for the Class, which now benefits from his efforts.

**II.     Class Counsel's efforts for the Class.**

This Action was filed by Class Counsel on December 2, 2015. (Dkt. # 1). Class Representative moved to be appointed lead plaintiff and have Class Counsel appointed as lead counsel in March 2016 (dkt. # 20), and both were appointed in April 2016. (Dkt. # 31).

In order to plead an amended complaint, Class Representative thoroughly investigated the claims in this action, consulting a damages expert, scouring ERBA's public filings and news published about it, and interviewing more than a dozen former ERBA employees. Horne Dec. ¶ 7. Class Representative then timely filed his Amended Class Action Complaint For Violations of the Federal Securities Laws (the "Amended Complaint"). (Dkt. # 34).

The ERBA Defendants and MHM each filed 20-page complex motions to dismiss the Complaint, which Plaintiff opposed. Dkts. # 40, 41, 45. Plaintiff then appeared for a hearing on Defendants' motions to dismiss, which the Court granted.

After dismissal, Class Representative appeared for a mediation before the Eleventh Circuit mediator. Horne Dec. ¶ 4. When that mediation failed, the Parties fully briefed Class Representative's appeal. After full briefing, the Parties reached a settlement in principle. *Id.* Thereafter, Class Representative negotiated the Settlement's complex terms, sought an indicative ruling from this Court that it would consider a motion for preliminary approval of settlement,

2

obtained a limited remand from the Eleventh Circuit to do so, and obtained preliminary approval from this Court.

### III. THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

#### A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in the Eleventh Circuit

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). In the Eleventh Circuit, courts must determine the appropriate award to attorneys by granting them a percentage of the fund created through their efforts, dubbed the "percentage of the fund method." *Camden*, 946 F.2d at 774-75 ("the percentage of the fund approach is the better reasoned in a common fund case. . . [h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class"). This approach appropriately encourages counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and, hence, most fairly ties plaintiffs' counsel's compensation to the benefit achieved for the class. There is no "hard and fast" rule dictating what constitutes a reasonable percentage of the recovery to award "because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 775.[1]

#### B. The Requested Fee is Reasonable Under the *Camden* factors

Under *Camden*, the court first fixes a benchmark, and then considers the so-called *Camden* factors to determine what constitutes a reasonable percentage award. *See Camden*, 946 F.2d at 773, 775. These factors include: (i) awards in similar cases; (ii) the time and labor required; (iii) the novelty and the difficulty of the questions; (iv) the skill requisite to perform the legal service properly, including the experience, reputation, and ability of the attorneys; (v) the preclusion of other employment by the attorney due to the acceptance of the case; (vi) the customary fee, including whether the fee is fixed or contingent; (vii) the amount involved and the results obtained;

---

[1] In this regard, the Eleventh Circuit expressly noted that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774–75.

3

(viii) the "undesirability" of the case; and (ix) the nature and length of the professional relationship with the client.[2]

### 1. Awards in similar cases

*Camden*, decided in 1991, suggested that an appropriate initial bench mark would be 25%, which courts should adjust up or down based on the specific facts of the cases. *Camden*, 946 F.2d at 775. But courts in securities class actions typically award higher percentages. Indeed, in the vast majority of securities class actions, courts in this district award attorneys' fees of either 30% or $33^{1/3}$%. *Shah v. DS Healthcare Group Inc. et al*, No. 0:16-cv-60661-WPD, dkt. # 81, at ¶21 (S.D. Fla. 2017) ($33^{1/3}$% of $2,100,000 fund); *In re Home Loan Servicing Solutions, Ltd. Securities Litigation*, No. 0:16-cv-60165-WPD, dkt. # 119, at ¶16 (S.D. Fla. 2016) ($33^{1/3}$% of $6,000,000 fund); *Sood v. Catalyst Pharmaceutical Partners Inc. et al*, No. 1:13-cv-23878-UU, dkt. # 153, at ¶18 ($33^{1/3}$% of $3,500,000 fund); *Howard v. Chanticleer Holdings, Inc.*, No. 12-cv-81123-JIC, dkt. # 74, at ¶4 (S.D. Fla. 2014) ($33^{1/3}$% of $850,000 fund); *Fuller v. Imperial Holdings*, 11-cv-81184-KAM, Dkt. # 95, at ¶17 (S.D. Fla. Dec. 16, 2013) (30% of $12 million fund); *Murdeshwar v. Searchmedia Holdings Ltd.*, 11-cv-20549, dkt # 103, at ¶14 (S.D. Fla. Apr. 25, 2012) ($33^{1/3}$% of $2.75 million fund); *Schorrig v. IBM Southeast Employees' Federal Credit Union*, 09-cv-80973-KLR, dkt. # 155, at *11 (S.D. Fla. Feb. 24, 2012) (30% of $950,000 fund); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*, 08-cv-23317-JAL, dkt. # 201, at ¶14 (S.D. Fla. July 17, 2013) ($33^{1/3}$% of $37.5 million fund); *Waterford Township General Employees Retirement System v. Bankunited Financial Corporation,* No. 08-cv-22572-MGC, dkt. # 164, at ¶11 (S.D. Fla. June 14, 2013) (30% of $3,000,000 fund); *Dance v. Levitt Corporation,* No. 08-cv-60111-DLG, dkt # 151, at ¶14 (S.D. Fla. Sep. 29, 2011) ($33^{1/3}$% of $1,948,050 fund); *Miller v. Dyadic International, Inc.,* No. 07-cv-80948-WPD, dkt, # 236, at ¶4 (S.D. Fla. July 28, 2010) ($33^{1/3}$% of $4,800,000 fund). Securities class actions have some structural features that call for higher awards. For example, they are "highly complex,"[3] require an

---

[2] Class Counsel had no relationship with Class Representative before this action, and there were no time limits imposed by the client or the circumstances.

[3] *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433 (E.D. Pa. 2001); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005).

extraordinary investment of time and resources and provide class members with hard cash rather than coupons.[4]

In a case similar to a securities class action, Judge Torres (in a report adopted by Judge Cohn) reflected on the factors that led him to grant an award of one third of the settlement fund, or $4,781,794.89. *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *4, *7 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012). There, a RICO case, counsel recovered 65% of investors' losses, or about 21.7% of total RICO damages, similar to the 23.5% recovery here. *Id.* at *1. Like in this case, "it was class counsel that bore alone the entire risk of this representation," including the risk of substantial unreimbursed expenses if they could not achieve a recovery. *Id.* at *1-2. And like in this case, "[p]erhaps the best objective test of the risk inherent in this litigation is the absence of any other attorneys willing to represent the class on a contingent fee basis," *id.* at *3. though here counsel issued the statutorily-mandated press release announcing the lawsuit and inviting other contenders. Here, as there, the Settlement is more valuable because it doesn't provide class members with vague non-monetary relief or coupons, but cash. *Id.* at *3.[5] The *Wolff* case had its share of difficulties, such as the difficulty of pursuing foreign proceedings, but this one had as well. To plead his claims, Plaintiff had to obtain inside knowledge from former employees of ERBA's accounting department. Yet ERBA is a small company and its accounting department is tiny. Finding an employee from that department willing to talk to Plaintiff is an exceptionally tall order.

### 2. Time and Labor Required

Lead Counsel has devoted significant time and resources to researching, investigating, and prosecuting of this action. By the time the Settlement was reached, Lead Counsel: (a) thoroughly investigated the facts and law of claims against ERBA; (b) retained private investigators and interviewed former ERBA employees; (c) drafted his initial and operative amended complaint; (d) obtained an expert damages report; (e) opposed the ERBA Defendants' and MHM's motions to dismiss; (f) filed an appellate brief and reply; (g) participated in a mediation; (h) had numerous

---

[4] *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *10 (S.D.N.Y. Oct. 25, 2006); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 447 (S.D. Tex. 1999) (antitrust class action with cash payment).
[5] Indeed, *Wolff* cited eight decisions from the Southern and Middle districts of Florida awarding 33% of the fund or more, and a further thirteen awarding between 30% and 33%. *Id.* at *6.

calls with Defendants' counsel. *See* Horne Dec. ¶ 7. After the parties agreed on the dollar figure, they negotiated the Stipulation of Settlement, including the exhibits thereto, a difficult and complex task.

Indeed, Class Counsel expended over 345.55 hours with a market value, or lodestar, of $248,932.75 at counsel's current billing rates, providing for a minimal multiplier of 1.63.[6] *See* Declaration of Jonathan Horne Concerning Fees, ¶ 6 ("Horne Fees Dec."), attached to the Horne Dec. as Exhibit 2. While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of an award of one-third of the Settlement Amount fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). The 1.63 multiplier requested here is below the range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit. *See, e.g.*, *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694–96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable.").

As such, the time and labor expended justify the fee requested.

### 3. The Novelty and Difficulty of the Questions Involved

Class Representative faced all the "multi-faceted and complex legal questions endemic" to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same). Moreover, "securities actions have become more difficult from a plaintiff's perspective in

---

[6] The Supreme Court has held that the use of current rather than historical rates is appropriate in examining the lodestar because current rates more adequately compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989). Courts in this Circuit also have stated that it is appropriate to use counsel's current rates in order to compensate for the delay in payment and inflation. *See, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988). Rates of The Rosen Law Firm, P.A. substantially identical to those charged here were recently approved in *Barocio v. Yingli Green Energy Holdings Co. Ltd.*, 15-cv-4003-ODW (MRWx), dkts. # 141-2, 149.

6

the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, No. CIV.A. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). This difficulty justifies a high percentage award. *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016).

Securities class action plaintiffs, like Plaintiff here, often try to meet the PSLRA's burdens by alleging facts they obtained from former employees. Both the facts and the former employees' sources of knowledge must be alleged with particularity; allegations about what is common knowledge within the company will not do. With ERBA's tiny accounting department, there simply were not many employees with relevant knowledge, let alone willing to voluntarily tell us what they knew. And indeed, the Court held that Plaintiff had not sufficiently alleged the Defendants' scienter.

Should the Eleventh Circuit reverse, Plaintiff would have to prove the claims they alleged. As more fully set out in Plaintiff's Final Approval Brief, discovery in this case would be complex, uncertain, and expensive. Among other things, Plaintiff would hire experts to opine on at least market efficiency, loss causation, damages, and various accounting issues. Defendants would present their own expert, and the results of battles of the experts are notoriously difficult to predict. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014). Taking depositions would be challenging in this international case, as some of the Defendants and many of the persons with knowledge are based in India, with others based in Germany and France.

Should the case have advanced to trial, Defendants would likely have argued that their disclosure adequately informed the public regarding ERBA's internal control issues, and that they had enough cash to pay their obligations as they came due but merely missed payments to vendor, as many businesses do. Class Representative might not have been able to convince the jury that Defendants' statement was materially false.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The quality of the representation by Class Counsel and the standing of Class Counsel are important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at 654. Class Counsel has developed a reputation for zealous advocacy even in relatively small securities class actions like this one. *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406

7

DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("Indeed, The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"). Class Counsel's hard-won reputation allowed them to credibly threaten to take this case as far as it takes. A copy of Class Counsel's firm resume is appended to the Declaration of Laurence Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses (the "Rosen Fee Dec.")

As noted above, the case required significant effort and resiliency. Plaintiffs claims were dismissed – yet Plaintiff's counsel persevered in briefing an appeal and achieved a significant recovery that benefits the class.

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See, e.g., Sunbeam,* 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. The ERBA Defendants were represented by experienced and highly-skilled lawyers from Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., which recently won an award for Litigation Department of the Year for Real Estate & Other Litigation – Midsize Law Firms, and MHM was represented by DLA Piper, a renowned nationwide law firm. Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this. That Class Counsel obtained this significant Settlement in the face of such skilled opposition shows that its representation was excellent.

### 5. Preclusion of Other Employment

When Class Counsel undertook to represent Plaintiffs in this matter, it understood that it would spend significant time and make significant out-of-pocket expenses. Class Counsel did not settle this case quickly, but only after briefing and arguing a motion to dismiss and fully briefing the appeal on the decision thereof. The time spent by Class Counsel on this case was at the expense of the time that they could have devoted to other matters.

### 6. The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654. The Court should give substantial

weight to the contingent nature of Class Counsel's fees when assessing the fee request. *See Behrens*, 118 F.R.D. at 548. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award"); *Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees"). This case is fully contingent, meaning that Class Counsel has not received any payments whatsoever and has put up $24,299.15 of its own money for out-of-pocket expenses, while paying attorney salaries, for the duration of the case.

Experience eventually teaches every lawyer that there is no such thing as a certain win in litigation. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and received no compensation at all. Even a victory at trial does not guarantee success. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *22 (S.D. Fla. Apr. 25, 2011) (granting motion for Judgment as a Matter of Law and Motion for New Trial). And even surviving post-trial motions in the district court is no guarantee of success on appeal. *Robbins v. Koger Props.*, 116 F.3d 1441, 1148-49 (11th Cir. 1997) (reversing $81.3 million jury verdict in a securities class action after almost seven years of litigation and rendering judgment in favor of defendant based on novel ruling that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations).

Because the fee in this matter was entirely contingent, the only thing that was certain was that Class Counsel would receive no fee if it obtained no recovery. The contingent nature of Class Counsel's representation strongly favors the requested fee.

### 7. The Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The $1.215 million Settlement is an outstanding result. In this case, Class Counsel retained a damages expert who analyzed Class Representative's recovery (if Class Representative won at trial, overcame Defendants' affirmative defense, maintained certification, and defeated Defendants' affirmative defenses). Horne Dec. ¶ 5. To arrive at a "best case" maximum estimate of damages, the expert made several optimistic or ad hoc assumptions. In a securities class action, plaintiffs typically measure per-share damages as the decline in value of the stock price following disclosures that reveal the fraud, called corrective disclosures. Here, the expert assumed that Plaintiff would be able to prove that every one of the corrective disclosures set out in the Complaint was caused by Defendants' false statements. *Id.* When measuring damages, experts must then account for the impact of non-fraud related news disclosed at the same time as the corrective disclosures. Damages are particularly apt to be slashed when the corrective disclosure is a release of the company's annual or quarterly results as at that time the company discloses a great deal of information. Here, though, the expert assumed that the entirety of the drop following the corrective disclosures was attributable to the fraud, even though 3 of the 5 corrective disclosures were made in earnings releases. *Id.* Finally, where including a second day's drop would increase damages, Plaintiff's expert made the ad hoc assumption that the second day's drop was likewise attributable to the fraud. *Id.*

With these doubtful assumptions, Class Representative's expert estimated that total maximum damages were $8.4 million. *Id.*[7] The Settlement thus returns an excellent 14.5% of maximum damages, significantly higher than the average recovery in cases of a similar size. *See Securities Class Action Settlements – 2016 Review and Analysis*, by Laarni T. Bulan, *et al.* (Cornerstone 2017), at 8 (attached as Exhibit 3 to the Horne Dec.) (in cases with estimated damages of less than $50 million, median settlement between 2005-2016 returned 10.8% of estimated damages);[8] *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses").

And the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent*

---

[7] Defendants dispute Class Representative's damages estimate.
[8] Also available at < http://securities.stanford.edu/research-reports/1996-2013/Settlements-Through-12-2013.pdf >.

*Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Indeed, EBRA has not filed any quarterly or annual financial statements since August 2015. Its financial soundness cannot be guaranteed, particularly if a judgment were to be entered against it. In contrast, this settlement provides a guaranteed recovery for Class Members.

### 8. The "Undesirability" of the Case

This is a complex case against defendants with modest financial resources. ERBA is a development stage company with little insurance and few revenues. Moreover, damages in this case were relatively small for a securities class action. Thus, even if a plaintiff could establish that Defendants were not merely inexcusably negligent but reckless, the plaintiff might be left chasing a company that might not survive the litigation without the possibility of a large recovery the plaintiff might see in a large damages case. The case, put simply, was undesirable.

Indeed, after he filed his Complaint, Plaintiff published statutorily mandated notice. Dkt. # 20-4. Such notice typically draws perhaps a half-dozen class members and their lawyers to file motions to be appointed as lead plaintiffs. Not here - Class Counsel were the only attorneys willing to take on this difficult case. The results achieved show that this was a meritorious case that should have been brought, but the fact that no other firm was willing to take it shows that it was also an undesirable case. Proving the point, one other law firm filed a substantively identical complaint, but then quickly withdrew it before Defendants filed any motion to dismiss.

### C. Important Public Policy Considerations Support The Requested Fees

Public policy considerations support the requested fee award. "Congress, the Executive Branch, and this Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2 (similar). Courts should award fees high enough to encourage lawyers to bring meritorious actions. *Ressler*, 149 F.R.D. at 657; *accord Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006); *Wolff*, 2012 WL 5290155, at *5. In this case, the rationale is especially compelling. Class Counsel have delivered class members an award significantly higher than what the median securities class action provides. Thus,

this is a case that should have been filed and prosecuted, but would not have been but for Class Counsel.

### D. Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained.

Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action"); 1 Alba Conte, Attorney Fee Awards, § 2.19, at 73-74 (3d ed. 2006) ("*Alba Conte*") ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

Class Counsel efficiently litigated this action and incurred expenses totaling $24,299.15 to prosecute and resolve this Action. *See* Horne Fee Dec., ¶ 8. These expenses include amounts incurred to pay fees of consulting experts, mediation fees, copying, telephone, travel costs, computer-assisted research, court fees, travel, mailing and fax costs, and other customary expenditures. *Id.*

Travel, experts, copying, court fees, claims administration and other customary expenditures should be reimbursed. *Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 WL 1153772, at *8 (S.D. Fla. Mar. 20, 2014). Likewise, "[r]easonable costs of computerized legal research are generally compensable." *Alba Conte*, 2.19, at n.16 ("Reasonable costs of computerized legal research are generally reimbursable"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1178 (S.D. Cal. 2007) (computer legal research costs recoverable because essential); *In re Genta Sec. Litig.*, No. CIV. A. 04-2123 JAG, 2008 WL 2229843, at *11 (D.N.J. May 28, 2008) (similar).

The expenses incurred were reasonable and necessary to successfully prosecute this case. The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of expenses in an amount not to exceed $30,000. *See* Declaration of Josephine Bravata Concerning The Mailing of The Notice Of Pendency and Proposed Settlement of Class Action and Proof of

Claim and Release Form, Ex. A. To date, there have been no objections to Lead Counsel's request for expenses. *Id.* at ¶10. The deadline to object is March January 3, 2019. *Id.*

### E. Payment to Class Representative

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1357 (granting service awards of $5,000 per class representative). Courts determine service awards by looking at "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.* Courts in this district commonly authorize service awards. *Pinto*, 513 F. Supp. 2d at 1344 ($7,500 per plaintiff). Courts have routinely authorized substantial payments to lead plaintiffs when requested in class action settlements approved in this District. *Aracruz Celulose*, at ¶ 16 ($40,000); *IBM*, at 11 ($1,500 for each class representative); *Imperial Holdings*, at ¶21 ($10,000).

Here, Nghiem Tran was the only class member willing to take on the role of Lead Plaintiff. The Class now benefits from his efforts. There were no objections to an award. The Court should award Mr. Tran $5,000.

## IV. CONCLUSION

For the foregoing reasons, the Court should award Class Counsel $33^{1/3}$% of the Gross Settlement Fund, or $405,000.00, award reimbursement of expenses of $24,299.15, and award Class Representative $5,000.

Dated:  December 26, 2018                    Respectfully submitted,

                                             **THE ROSEN LAW FIRM, P.A.**

                                             ___/s/ Jonathan Horne _
                                             Jonathan Horne (pro hac vice)
                                             Laurence M. Rosen
                                             Fla. Bar No. 0182877
                                             275 Madison Avenue, 34th Floor
                                             New York, New York 10016
                                             Phone: (212) 686-1060
                                             Fax: (212) 202-3827

                                             *Class Counsel*

CERTIFICATE OF SERVICE

I hereby certify that on this on the December 26, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen